UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Roy E. Johnson,                    :
          Petitioner,             :
                                   :
     v.                            :     File No. 2:06-CV-81
                                   :
Robert Hofmann,                    :
Commissioner, Vermont             :
Department of Corrections,        :
          Respondent.             :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 6 and 7)

Petitioner Roy E. Johnson, proceeding *pro se*, has

filed a petition under 28 U.S.C. § 2254 for a writ of

habeas corpus.  Johnson claims that his state sentence

for first degree murder should be vacated on two grounds.

First, Johnson claims that the state courts erred in

declining to hear his second post-conviction review

petition on the merits, instead dismissing the petition

as successive.  Second, he argues that new expert

testimony will prove that the state's primary trial

witness was unreliable.

The respondent has moved to dismiss, claiming that

Johnson's claims are barred by the statute of

limitations.  The respondent also claims that the

petition must be dismissed for failure to exhaust state

court remedies.  For the reasons set forth below, I

recommend that the respondent's motion to dismiss (Paper 6) be GRANTED, that Johnson's motion for appointment of counsel (Paper 7) be DENIED as moot, and that the petition be DISMISSED.

<u>Factual and Procedural Background</u>

On January 22, 1990, Johnson was convicted by a jury in state court of first degree murder.  On direct appeal, the Vermont Supreme Court summarized the facts as follows:

> In the early morning hours of May 31, 1989, following a night of imbibing alcohol and driving from one location to another, defendant, the victim, and the [state's primary] witness arrived at a spot along the [Lamoille] river. Defendant, who allegedly had already attempted to asphyxiate the victim only an hour or so earlier, drove his car into the victim soon after they arrived.  Apparently, the victim was bruised and in pain but not seriously injured.
>
> Defendant then pushed the victim into the river. As the victim stood in two or three feet of water, defendant threw an eight- or nine-inch rock at him, and was about to throw another larger rock when the witness intervened. Shortly thereafter, defendant threw the victim's wallet farther out into the river, purportedly to induce him to proceed deeper into the water. Defendant knew that the victim was in his sixties, in poor health, gullible, and drunk. He also knew that the victim believed the wallet contained a significant amount of money.  The victim did indeed swim farther out into the cold water.  Failing to retrieve the wallet, he

remained afloat by clinging to a branch of a
half-submerged tree that extended into the
river.  Defendant rejected a suggestion that
they rescue the victim, stating "He's history.
He knows too much."  Apparently, this statement
was in reference to a crime spree of the
preceding days, in which defendant had the
victim write worthless checks for a variety of
valuable items.  Defendant and the witness left,
and sometime that morning the victim drowned.

State v. Johnson, 158 Vt. 508, 511-12 (1992).  Johnson

received a sentence of 60 years to life.

On appeal, in a decision dated May 22, 1992, the

Vermont Supreme Court upheld Johnson's conviction.

Johnson claims that he raised five issues on direct

appeal: (1) insufficient evidence; (2) erroneous jury

instructions; (3) that the trial court failed to examine

a juror after the juror's return from an emergency leave

of absence; (4) the trial court should not have

questioned an expert witness; and (5) that a charge

carrying a life sentence needed to be brought in by

indictment rather than by information.  The Supreme Court

held, *inter alia*, that the evidence was sufficient to

find that Johnson had placed the victim in a dangerous

situation, and that Johnson could therefore be held

responsible for his victim's death.  The court further

concluded that there was ample evidence for a reasonable

3

jury to conclude that Johnson intended to cause the victim's death. "Not only was there evidence of a motive for the killing, but there was also evidence that defendant had attempted to kill the victim earlier by asphyxiation, and that the victim's body had bruises and abrasions that could have been caused by an automobile driven at a slow speed." Id. at 512-13.

Johnson filed his first post-conviction relief ("PCR") petition, *pro se*, in state court on August 24, 1992, and was subsequently appointed counsel. The petition claimed that Johnson's attorney had been ineffective during the investigative, pre-trial and trial phases of the case, and that his attorney's prior work as a state prosecutor created a conflict of interest. Johnson now claims that he asked his PCR counsel to amend the petition to assert additional claims. Those claims included allegations (1) that the state's primary witness at trial was incompetent due to a prior conviction for false swearing, which conviction the state had failed to disclose, (2) that the state had improperly instructed certain witnesses not to speak with defense counsel, and had improperly influenced those witnesses' testimony, and

4

(3) that trial counsel was ineffective for failing to move to suppress the primary witnesses testimony, and for failure to argue prosecutorial misconduct.  PCR counsel allegedly declined to add these claims to the petition.

On March 28, 1994, the superior court granted the state's motion for summary judgment on the conflict-of-interest issue.  On May 22, 1996, the court denied the remainder of the petition.  Johnson again appealed to the Vermont Supreme Court, and on April 3, 1997, that court upheld the lower court's decision.

On June 29, 1998, Johnson filed a motion for a writ of habeas corpus in state court, arguing prosecutorial misconduct.  The court denied the writ and converted the filing to a second PCR petition.  On June 30, 1998, the court dismissed the petition as successive, and Johnson appealed.  The Vermont Supreme Court remanded the case, noting that although Johnson's motion for appointment of counsel had been granted by the lower court, counsel had never been appointed.

On May 1, 2000, with the assistance of counsel, Johnson filed an amended PCR petition.  The amended petition listed five claims, including the three claims

5

that Johnson had allegedly asked his initial PCR counsel
to raise.  The amended petition also argued that the
prosecution had failed to disclose certain evidence to
the defense, and that counsel during the first PCR
hearing and subsequent appeal had been ineffective.  The
court declined to address any of the claims pertaining to
Johnson's trial, concluding that he had failed to show
why those claims could not have been raised in the
initial PCR proceeding.  With respect to the
effectiveness of PCR counsel, the court concluded that
Johnson had failed to show either that counsel was
ineffective, or that counsel's alleged ineffectiveness
affected the outcome of the proceeding.  On January 24,
2003, the Vermont Supreme Court affirmed.

On January 27, 2006, Johnson filed a motion for a
writ of error *coram nobis* in state court.  In this
motion, Johnson claimed that his sentence was based upon
aggravating factors not found by a jury, thus violating
his Sixth Amendment rights.  The state district court
denied the motion.  It is not clear from the record
whether Johnson has continued to pursue this claim in the
state courts.  Johnson filed his instant petition for

writ of habeas corpus on April 27, 2006.

Discussion

I.   <u>Statute of Limitations</u>

The respondent first argues that Johnson's § 2254 petition is barred by the applicable statute of limitations.  The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides a one-year statute of limitations during which petitioners must file their petitions for writs of habeas corpus.  28 U.S.C. § 2244(d)(1).  Generally, this one-year period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  The AEDPA also provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  The tolling provision under § 2244(d)(2) applies only if petitioner's post-conviction motion was pending within the one-year limitations period, and excludes from the limitations period only the time the motion remained

undecided.  Smith v. McGinnis, 208 F.3d 13, 16 (2d Cir. 2000).

In this case, the Vermont Supreme Court affirmed Johnson's conviction on May 22, 1992.  Johnson did not seek a writ of certiorari from the United States Supreme Court.  Accordingly, his conviction became final in August, 1992, 90 days after the Vermont Supreme Court issued its opinion.  Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001).  He filed his first PCR petition that same month, and the petition was pending until it was ruled upon by the state supreme court on April 3, 1997.

Johnson filed his next state court petition on June 29, 1998.  This decision was rejected on appeal by the Vermont Supreme Court on January 24, 2003.  The record does not show any further filings for collateral relief, in either state or federal court, until 2006.  With over three years having elapsed between Johnson's filings, it appears that his current petition is untimely.

A petition that is time-barred cannot proceed unless there is a basis for equitable tolling.  Equitable tolling is appropriate only where "rare and exceptional

circumstances" prevented the petitioner from filing his application on time.  McGinnis, 208 F.3d at 17 (internal citations omitted).  To merit equitable tolling, the petitioner must show that he acted with "reasonable diligence" during the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances beyond his control prevented successful filing during that time.  Smaldone v. Senkowski, 273 F.3d 133, 138 (2d Cir. 2001).

In response to the motion to dismiss, Johnson urges the Court to retain the case based upon his claim of actual innocence.  "For this Honorable Court to grant the States [sic] request to dismiss my case based on a technicality would certainly not serve the ends of justice."  (Paper 7 at 1).  The Second Circuit has "previously declined to rule on whether 'the Constitution requires an "actual innocence" exception to [the] AEDPA's statute of limitations.'"  Whitley v. Senkowski, 317 F.3d 223, 225 (2d Cir. 2003) (quoting Lucidore v. New York State Div. of Parole, 209 F.3d 107, 114 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000)).  However, the Second Circuit has stated that if actual innocence does provide

a basis for tolling the limitations period, courts should
evaluate whether a petitioner has made a credible showing
of actual innocence based upon the "delineation of the
evidentiary showing necessary to demonstrate actual
innocence" set forth in Schlup v. Delo, 518 U.S. 298
(1995).  Doe v. Menefee, 391 F.3d 147, 161 (2d Cir.
2004).  Under the Schlup standard, a petitioner is
required to present "'new reliable evidence - whether it
be exculpatory scientific evidence, trustworthy accounts,
or other critical physical evidence - that was not
presented at trial.'"  Id. (quoting Schlup, 513 U.S. at
324).  If a petitioner presents such evidence, the court
should weigh that evidence against all the evidence
pointing to petitioner's guilt to determine whether "it
is 'more likely than not that no reasonable juror would
have found Petitioner guilty beyond a reasonable doubt.'"
Id. at 162 (quoting Schlup, 513 U.S. at 327).

     Johnson sets forth two fundamental claims in his §
2254 petition: (1) that the state court should not have
denied his second post-conviction review petition as
successive, and (2) that expert testimony will show that
Demar's possible ingestion of pills at the time of the

murder renders his testimony unreliable.  His petition
also includes facts that, although not directly relevant
to these claims, support his assertion of actual
innocence.  First, Johnson argues generally that the
state's primary trial witness, Roderick Demar, was not
reliable.  This argument is premised, in part, upon the
testimony that Demar presented at trial and the alleged
inconsistencies therein.  For example, Demar allegedly
testified at deposition that Johnson had at first tried
to asphyxiate the victim by attaching a garden hose to
the exhaust pipe of a Dodge Dart.  A state trooper
subsequently discovered that the hose was not long enough
to be used as described on that type of car.  At trial,
Demar identified the vehicle as a Mercury Bobcat.  Trial
counsel cross-examined Demar, who testified that his
earlier identification of the car had been mistaken.  In
unrelated testimony, Demar allegedly stated that the
victim "did not want to return from the river and was,
according to Demar, sitting in the partially submerged
tree waving good-bye when Demar and Petitioner left the
scene."  (Paper 4 at 9).

Johnson further claims that Demar spoke with Edward

Latimer shortly before the murder, and told Latimer that
the victim was going to "end up at the bottom of the
river." (Paper 4 at 9). Latimer was deposed by the
state prior to trial, but was reluctant to provide
testimony against Demar without receiving a "deal" from
the state on his own criminal case. Johnson claims that
although Latimer's testimony could have been exculpatory,
trial counsel failed to subpoena him to testify.

According the Johnson's petition, the "new" evidence
at trial would presumably include the expert testimony
about Demar's possible drug ingestion and the allegedly
exculpatory statements by Latimer.[1] As discussed above,
the Second Circuit has instructed lower courts to
"evaluate the reliability of the new evidence by
'considering it on its own merits and, where appropriate,
in light of the pre-existing evidence in the record.'"
Groark v. Phillips, 2005 WL 2786970, at *3 (E.D.N.Y. Oct.
26, 2005) (quoting Menefee, 391 F.3d at 161). With
respect to reliability, the Court has no reason to doubt

---

[1] The Court recognizes that, had the state court granted relief on
Johnson's second PCR petition, new evidence might also include proof of
Demar's conviction for false swearing. Johnson further alleges that he
has evidence of prosecutorial misconduct, but does not provide any details
about either his allegations of witness intimidation or his claim that the
prosecution failed to disclose evidence.

that an expert might reliably testify that a certain drug could cause confusion.  Although the Court does not have the full trial record before it, neither party has suggested that any of the evidence at trial ran counter to this proposed testimony.

As to Demar's statements to Latimer, the Court again has no basis to doubt that this conversation occurred. The Court has no information about Latimer, other than the fact that he had a criminal charge pending against him.  While Demar's alleged statement to Latimer was arguably inconsistent with some of the testimony pertaining to Johnson's guilt at trial, the Court cannot say, based upon the papers presented to it, that this fact would have rendered Latimer's testimony unreliable.

Nonetheless, even if the Court assumes reliability, it must determine whether the evidence shows that "no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." Menefee, 391 F.3d at 162 (citing Schlup, 513 U.S. at 327).  Although Johnson's "new" evidence was not presented at trial, the Vermont Supreme Court addressed several of the issues that Johnson now offers in support of his actual innocence

claim.  In its decision on direct appeal, the Vermont
Supreme Court considered the fact that Demar was under
the influence of alcohol at the time of the murder, the
inconsistencies in Demar's testimony, and the fact that
Demar had reason to clear himself by testifying against
Johnson.  Despite these facts, the court found that the
jury could have reasonably found Johnson guilty of first
degree murder.

> We recognize that [Demar] was intoxicated at the
> time these events took place, that he interacted
> with the other two men throughout the entire
> episode and may have had reason to inculpate
> defendant, that cross-examination brought to
> light many inconsistencies in his story, and
> that he testified that he believed the victim
> did not want to return from the river and was
> sitting in the tree waving goodbye as the other
> two men left.  Assessing the credibility of
> witnesses, however, is the province of the jury
> . . . and there was ample evidence for a
> reasonable jury to conclude that, to silence the
> victim, defendant intended to cause his death by
> luring or frightening him into the river in his
> inebriated condition.  Not only was there
> evidence of a motive for the killing, but there
> was also evidence that defendant had attempted
> to kill the victim earlier by asphyxiation, and
> that the victim's body had bruises and abrasions
> that could have been caused by an automobile
> driven at low speed.  Given this evidence, the
> jury could have concluded that, even if the
> victim had an opportunity to return to shore, he
> was afraid to do so for fear of defendant, and
> that his death was the natural result of
> defendant's conduct.

Johnson, 158 Vt. at 512-13.

The Schlup decision does not allow a court to make an independent judgment of whether reasonable doubt exists, but instead requires a "probabilistic determination about what reasonable, properly instructed jurors would do."  513 U.S. at 329.  "This probabilistic analysis must determine 'not merely [whether] . . . a reasonable doubt exists in the light of the new evidence,' but rather whether it is more likely than not 'that no reasonable juror would have found the defendant guilty.'"  Menefee, 391 F.3d at 163 (quoting Schlup, 513 U.S. at 329).  In this case, the jury was provided with facts and a motive for the killing.  The jury was also presented with reasons to doubt Demar's testimony.  Even if the jury had been provided with further testimony about Demar's state of mind, the inconsistencies in his story, or evidence that Demar knew the victim was going to be drowned, this Court should not find that "no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.

In claiming actual innocence, Johnson fails to counter the strongest parts of Demar's testimony.  For

15

example, the testimony about Johnson attempting to kill
his victim with a car, then pushing the victim into the
river and throwing rocks at him, remains uncontroverted.
The jury was aware that Demar might be an alternatve
suspect in the murder, yet still believed his testimony
about Johnson's behavior.  The jury also appears to have
believed that Johnson allowed the victim to die, perhaps
because the victim "[knew] too much" about their scheme
to pass worthless checks.  <u>Johnson</u>, 158 Vt. at 512.  The
new evidence that Johnson proposes to present would not
alter the factual presentation so significantly that no
reasonable juror could have found him guilty.  For these
reasons, Johnson has failed to meet his burden of showing
actual innocence.  Consequently, even if actual innocence
required equitable tolling under the AEDPA, Johnson would
not be entitled to tolling in this case, and the Court
should DISMISS his petition.

II.  <u>Exhaustion of State Court Remedies</u>

     The respondent also argues that Johnson failed to
present his claims in state court.  Before a federal
court may grant habeas relief, a petitioner must exhaust
his state remedies.  <u>O'Sullivan v. Boerckel</u>, 526 U.S.

16

838, 842 (1999).  "The exhaustion requirement imposed by
28 U.S.C. § 2254(b)(1) means generally that before
seeking a writ of habeas corpus in federal court, a state
prisoner must first have presented his claim to the
highest court of the state."  Morgan v. Bennett, 204 F.3d
360, 369 (2d Cir. 2000).  This requirement ensures that
"state prisoners give state courts a fair opportunity to
act on their claims."  O'Sullivan, 526 U.S. at 844.

   Although applicants for federal habeas relief are
required under 28 U.S.C. § 2254(b) to exhaust all state
remedies, if a federal claim is not reviewed by the
highest state court, "it will be deemed exhausted if it
is, as a result, then procedurally barred under state
law."  Ramirez v. Attorney General, 280 F.3d 87, 94 (2d
Cir. 2001) (citations omitted).  Under Vermont law, and
"[a]bsent exigent circumstances, 'collateral attack is
barred if the movant deliberately bypassed the issue on
appeal.'"  In re Hart, 167 Vt. 630, 630 (1998) (quoting
In re Stewart, 140 Vt. 351, 361 (1981)).  Here, Johnson's
claims pertaining to his trial, and specifically his
claim that expert testimony should have been offered, do
not appear to have been raised in state court.  To the

extent that he tried to raise these or similar claims, he was barred for failure to avoid Vermont's deliberate bypass rule, and will undoubtedly be barred in the future.  (Paper 6-7 at 2-3); see 13 V.S.A. § 7134 ("The court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner.").  Therefore, Johnson's claims are procedurally barred in state court, and this Court must turn to the question of whether a merits-based review of the claims is warranted.

Federal review of the merits of procedurally defaulted claims is appropriate if petitioner can establish cause for the default and resulting prejudice or that failure to consider the defaulted claims will lead to a "fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ramirez, 280 F.3d at 94.  Although Johnson has not formally argued either cause or prejudice, he blames his first PCR attorney for failing to raise all of his claims in the initial PCR petition.  The Second Circuit has held that because there is no right to effective assistance of counsel in a collateral proceeding, "ineffective assistance of counsel

does not constitute cause sufficient to excuse an abuse
of the writ." <u>Bloomer v. United States</u>, 162 F.3d 187,
191 n.1 (2d Cir. 1998).  Therefore, even assuming that
Johnson's first PCR attorney was ineffective, this
ineffectiveness does not establish cause for failing to
raise issues in an initial petition.

Moreover, the Vermont Supreme Court considered
Johnson's ineffectiveness claim, and determined that
Johnson had failed to show either ineffectiveness or
prejudice: "Nor has petitioner advanced any facts or
argument showing that counsel was ineffective in failing
to raise the issues in the first petition, or that but
for the omission there is a reasonable probability the
outcome at trial would have been different.  <u>In re
Dunbar</u>, 162 Vt. 209, 212, (1994); see also <u>Strickland v.
Washington</u>, 466 U.S. 668, 694 (1984)."  (Paper 6-8 at 2).
For the reasons discussed above with respect to Johnson's
actual innocence claim, this Court, like the Vermont
Supreme Court, should find that Johnson has failed to
show that counsel was ineffective for failing to raise
questions regarding either Demar's testimony or the
conduct of the prosecution.

19

Because Johnson has failed to show cause and prejudice for his state court default, the Court may only review Johnson's claims if he has established that failure to do so will result in a fundamental miscarriage of justice. <u>Coleman</u>, 501 U.S. at 750. In other words, Johnson must establish that a constitutional violation "has probably resulted in the conviction of one who is actually innocent." <u>Dixon v. Miller</u>, 293 F.3d 74, 81 (2d Cir. 2002) (quotation omitted). The standard for showing actual innocence in the context of state court exhaustion is the same standard used in assessing actual innocence under the statute of limitations analysis. <u>See</u> <u>Menefee</u>, 391 F.3d at 161. As set forth above, Johnson has failed to establish that with the additional evidence he presents, no reasonable juror would have found him guilty. <u>Schlup</u>, 513 U.S. at 327. Therefore, the arguments pertaining to the trial and initial collateral review proceedings remain procedurally barred.

The one issue being raised by Johnson that has been exhausted in the state courts is the question of whether the state court properly denied his second PCR petition as successive. As the state superior court properly

concluded, Rule 60(b) of the Vermont Rules of Civil
Procedure provided Johnson with an opportunity for relief
with respect to the outcome of his first PCR proceeding.
(Paper 6-7 at 3).  That court also found that, as a
matter of state law, Johnson had failed to set forth
facts to support his claim that counsel was ineffective
in his first PCR.

As noted above, there is no constitutional right to
counsel on collateral review.  Pennsylvania v. Finley,
481 U.S. 551, 555 (1987) ("We have never held that
prisoners have constitutional right to counsel when
mounting collateral attacks upon their convictions, and
we decline to so hold today.  Our cases establish that
the right to appointed counsel extends to the first
appeal of right, and no further.").  Consequently, there
is no federal violation for the Court to review.[2]  To the
extent that the Vermont courts based their decisions on
state law, this Court has no jurisdiction to review those
rulings.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991)
("In conducting habeas review, a federal court is limited

---

[2]  The state court only reached the ineffectiveness question because it
determined that Johnson had been entitled to PCR counsel pursuant to
Vermont's PCR statute, 13 V.S.A. § 7131.  (Paper 6-7 at 2).

to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Johnson's claim for habeas corpus relief on the basis of the state courts' denials of his second PCR petition is, therefore, without legal merit, and the entire petition should be DISMISSED.

## Conclusion

For the reasons set forth above, I recommend that the respondent's motion to dismiss (Paper 6) be GRANTED, Johnson's motion for appointment of counsel (Paper 7) be DENIED as moot, and Johnson's § 2254 petition be DISMISSED.

Dated at Burlington, in the District of Vermont, this 9th day of November, 2006.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).